CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 03 2017

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Action No. 1:04CR00067 |
| | (Civil Action No. 1:16CV80974) |
| v. | |
| | MEMORANDUM OPINION |
| CECIL EDWARD WAMPLER, JR., | |
| | By: Hon. Glen E. Conrad |
| Defendant. | Chief United States District Judge |

Defendant Cecil Edward Wampler, Jr., through counsel, has filed a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255. He argues that following Johnson v. United States, 135 S. Ct. 2551 (2015), his sentence for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), is unlawful, because he no longer has the requisite number of convictions to support an enhanced sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). The government has moved to dismiss, and counsel for Wampler has responded.

This case has been held in abeyance pending decisions by the United States Court of Appeals for the Fourth Circuit in United States v. Lamar Lee, No. 15-6099, and United States v. Winston, No. 16-7252. Following this court's decision in United States v. Brown, 7:12-cr-00026, 2017 WL 76932, 2017 U.S. Dist. LEXIS 1815 (W.D. Va. Jan 6, 2017), defense counsel moved to vacate the abeyance orders and expedite review. The court finds it appropriate to do so, will grant Wampler's § 2255 motion, and deny the government's motion to dismiss.

I.

On September 21, 2004, a federal grand jury charged Wampler and two codefendants in a nine-count superseding indictment with various weapons and methamphetamine-related crimes.

Wampler pleaded guilty, pursuant to a written plea agreement, to conspiracy to possess with intent to distribute and distribute 50 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B) ("Count One"); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) ("Count Six"); and possession of a firearm after having been convicted of a felony and while being an unlawful user of a controlled substance, in violation of 18 U.S.C. §§ 922(g)(1), 922(g)(3) and 924(e) ("Count Eight").

The Presentence Investigation Report ("PSR"), prepared in anticipation of sentencing, grouped Counts One and Eight, as required under United States Sentencing Guideline ("U.S.S.G.") § 3D1.2(b). Accordingly, the PSR recommended a total offense level of 33 for Counts One and Eight, in accordance with U.S.S.G. § 4B1.4(b)(3), because Wampler qualified as an armed career criminal under the ACCA, 18 U.S.C. §§ 922(g) and 924(e). PSR ¶ 39, ECF No. 194. Without the armed career criminal designation, Wampler's total offense level would have been 26. Id. ¶ 36. The PSR listed the following prior felony convictions to support the ACCA enhancement: (1) a 1985 Virginia unlawful wounding conviction; (2) a 1992 Virginia burglary conviction; and (3) a 1998 Virginia manufacturing of marijuana conviction. Id. ¶¶ 44, 45, 46. The PSR recommended a criminal history category of IV, resulting in a guideline imprisonment range of 188 to 235 months on Counts One and Eight, and a consecutive sentence of 60 months to life imprisonment on Count Six. Id. ¶¶ 71, 72.

The court adopted the PSR recommendation and sentenced Wampler to a total of 248 months' incarceration: 188 months as to Counts One and Eight, to be served concurrently, and 60 months as to Count Six, to be served consecutive to the sentence imposed on Counts One and Eight. Judgment 2, ECF No. 117.

Wampler did not appeal. On January 14, 2008, he filed a § 2255 petition, asserting various claims of ineffective assistance of counsel. The court dismissed the motion as untimely and denied a motion for reconsideration. Order at 1, ECF No. 126; Order at 1, ECF No. 134. Wampler appealed the court's order dismissing his § 2255 motion, but the Fourth Circuit affirmed. United States v. Wampler, 296 F. App'x 354 (4th Cir. 2008). In November 2008, Wampler filed a motion to withdraw his guilty plea, which the court construed as a successive § 2255 motion, and dismissed. Wampler filed a § 2255 petition again attempting to withdraw his guilty plea, which the court dismissed as successive and the Fourth Circuit affirmed. United States v. Wampler, 361 F. App'x 490 (4th Cir. 2010). Wampler filed a motion to reconsider, which was denied. Order at 1, ECF No. 172. On August 7, 2013, Wampler filed another § 2255 petition, arguing that his predicate offense of burglary no longer qualified as an ACCA predicate following the Supreme Court's decision in Descamps v. United States, 133 S. Ct. 2276 (2013). § 2255 motion at 1, ECF No. 186. The court construed it as a successive petition, and dismissed it. Mem. Op. at 2, ECF No. 184. Following the Supreme Court's decision in Johnson, 135 S. Ct. 2551, he filed another § 2255 motion challenging his armed career criminal designation, which was again dismissed as successive. Mem. Op. at 2, ECF No. 191. Wampler requested permission from the Fourth Circuit to file a successive petition, which was also denied. Notice, ECF No. 195.

Pursuant to Standing Order 2015-5, the court appointed the Federal Public Defender's Office to represent Wampler with regard to any Johnson claims that he might have. On June 13, 2016, the Fourth Circuit granted Wampler permission to file a successive § 2255 motion under Johnson, and defense counsel filed the current motion.

3

## II.

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that "the court was without jurisdiction to impose such a sentence;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Petitioners bear the burden of proving grounds for a collateral attack by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

### A. Timeliness of Petition

A petition under § 2255 must adhere to strict statute of limitations requirements. Generally, a petitioner must file a § 2255 motion within one year from the date on which his judgment of conviction became final. 28 U.S.C. § 2255(f)(1). However, the statute allows for an additional one-year limitations period from the date on which the Supreme Court recognizes a new right made retroactively applicable on collateral review. Id. at § 2255(f)(3).

Wampler filed his § 2255 motion on June 13, 2016, more than one year from the date of his final judgment in 2005. Accordingly, his motion is untimely under § 2255(f)(1). Nonetheless, his petition is timely under § 2255(f)(3), because he filed it within one year of the Supreme Court's decision in Johnson, 135 S. Ct. 2551, which issued on June 26, 2015. Brown, 2017 WL 76932, *2 (concluding that petitioners who were sentenced as armed career criminals based, at least in part, on Virginia burglary predicate convictions, presented timely claims for relief because they filed within one year of the Johnson decision).

In order to explain why Wampler's petition implicates Johnson, and is, therefore, timely, a review of the ACCA is necessary. Federal law prohibits convicted felons from possessing firearms. 18 U.S.C. § 922(g). Defendants who violate this law are subject to a term of up to ten

4

years' imprisonment. 18 U.S.C. § 924(a)(2). However, when defendants convicted of a § 922(g) charge have three or more prior convictions for "serious drug offenses" or "violent felonies," they qualify as armed career criminals under the ACCA. Armed career criminals face an increased punishment: a statutory mandatory minimum of fifteen years' imprisonment and a maximum of life. 18 U.S.C. § 924(e)(1). In addition, an armed career criminal designation can increase a defendant's advisory guideline range of imprisonment, as it did in Wampler's case. U.S.S.G. § 4B1.4.

In <u>Johnson</u>, the Supreme Court invalidated part of the definition of "violent felony" under the ACCA. 135 S. Ct. at 2563. The ACCA defines a "violent felony" as:

> [A]ny crime punishable by imprisonment for a term exceeding one year . . . that –
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). In <u>Johnson</u>, the Supreme Court reviewed subsection (ii) of the violent felony definition. The first part of this subsection lists specific types of crimes that qualify as violent felonies: burglary, arson, extortion and crimes involving explosives. This list of crimes, referred to as the "enumerated crimes clause," was not invalidated by <u>Johnson</u>. 135 S. Ct. at 2563 (noting that other than the residual clause, the Court's holding "d[id] not call into question . . . the remainder of the [ACCA's] definition of a violent felony"). However, <u>Johnson</u> struck down, as unconstitutionally vague, the end of subsection (ii) — "or otherwise involves conduct that presents a serious potential risk of physical injury to another" — known as the "residual clause." 135 S. Ct. at 2563. Therefore, following <u>Johnson</u>, prior convictions that qualified as "violent felonies" under the residual clause can no longer serve as ACCA predicates.

5

The Supreme Court's decision in Johnson announced a new rule of constitutional law that applies retroactively to cases on collateral review. Welch v. United States, 136 S. Ct. 1257, 1268 (2016). Wampler can rely on the extended limitations period in § 2255(f)(3) because his previous conviction for Virginia burglary, in violation of Va. Code § 18.2-91, was considered a predicate offense under the residual clause of the ACCA, prior to the Johnson decision. See Taylor v. United States, 495 U.S. 575, 589, 597 (1990) (concluding that "ordinary burglaries, as well as burglaries involving some element making them especially dangerous, presented a sufficiently 'serious potential risk' [under the residual clause] to count toward [an ACCA] enhancement"). Virginia burglary convictions have also qualified as predicate offenses under the enumerated crimes clause of the ACCA, but that does not affect the timeliness or validity of Wampler's claims. United States v. Wall, 194 F.3d 1307, *1 (4th Cir. 1999) (unpublished) (concluding that the district court had properly considered the defendant's indictment to determine whether the jury found the elements of generic burglary and properly classified him as an armed career criminal under the enumerated crimes clause). Wampler has established that the Johnson decision is inextricably linked to his claim for relief under § 2255, because the Supreme Court established a new, retroactively applicable rule of constitutional law, which provided Wampler with a cause of action to challenge his sentence. See TRW Inc. v. Andrews, 534 U.S. 19, 37 (2001) (Scalia, J., concurring) ("Absent other indication, a statute of limitations begins to run at the time the plaintiff has the right to apply to the court for relief) (internal quotation marks omitted).

Wampler's PSR provided that he had the requisite three "previous convictions for a violent felony or a serious drug offense, or both," without going into any detail. PSR ¶ 39, ECF No. 194. The court adopted the PSR and the judgment does not specify under which clause(s) of

the ACCA the various predicates were classified. Therefore, the record establishes only that Wampler was sentenced as an armed career criminal. The court will not presume which clause of the ACCA—the residual clause or the enumerated crimes clause—was used to support his armed career criminal designation when both clauses were clearly in play at the time of his sentencing. Accordingly, Wampler's claim is timely. See Brown, 2017 WL 76932, *2.

**B. Procedural Default**

In addition, Wampler had cause for failing to raise his claim that the residual clause was unconstitutionally vague on direct review. See generally, Massaro v. United States, 538 U.S. 500, 504 (2003) (noting that claims not raised on direct appeal may generally not be raised on collateral review). An equitable exception to the procedural default rule applies when a petitioner can demonstrate cause and actual prejudice. Bousley v. United States, 523 U.S. 614, 622 (1998). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999); see also United States v. Pettiford, 612 F.3d 270, 280 (4th Cir. 2010).

Here, Wampler can establish cause because of the novelty of his claim. Brown, 2017 WL 76932, *4. The Supreme Court has made clear that when it establishes "a new constitutional rule, representing a clear break with the past," a petitioner may have been justified in failing to raise the issue on direct review. Reed v. Ross, 468 U.S. 1, 17 (1984). Specifically, the Supreme Court has concluded that a petitioner collaterally attacking his conviction and sentence is "sufficiently excus[ed]" from having raised an issue below when one of its decisions either "explicitly overrule[s] one of [its] precedents" or "overturn[s] a longstanding and widespread

7

practice to which th[e] Court has not spoken, but which a near-unanimous body of lower-court authority has expressed approval." Id. (internal quotation marks omitted).

Those exceptions apply to Wampler's situation. Well before Wampler was sentenced, the Supreme Court had already affirmed the viability of the residual clause. Taylor, 495 U.S. at 597 (reviewing the legislative history of the ACCA and noting that Congress had a purpose in including each clause of the ACCA and that the residual clause "implied coverage of crimes such as burglary"). In addition, in 1995, before Wampler was sentenced, the Fourth Circuit concluded that the residual clause was not void for vagueness. United States v. Presley, 52 F.3d 64, 68 (4th Cir. 1995). Every other circuit court to consider the issue, both before and after Presley, came to the same conclusion. See, e.g., United States v. Sorenson, 914 F.2d 173, 175 (9th Cir. 1990); United States v. Veasey, 73 F.3d 363, *2 (6th Cir. 1995) (unpublished); United States v. Childs, 403 F.3d 970, 972 (8th Cir. 2005); United States v. Hart, 674 F.3d 33, 41 n.3 (1st Cir. 2012). Finally, in 2007, the Supreme Court made a definitive ruling on the issue, and explicitly rejected a vagueness challenge to the ACCA's residual clause in James v. United States, 550 U.S. 192, 210 n. 6 (2007) ("[W]e are not persuaded . . . that the residual provision is unconstitutionally vague.").

The recent decision in Johnson expressly overrules James. Johnson, 135 S. Ct. at 2563 ("Our contrary holding[] in James . . . [is] overruled."). Although "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time," this is not such a situation. Bousley, 523 U.S. at 622. Every court of appeals to consider the issue, prior to Johnson, had rejected a vagueness challenge to the ACCA's residual clause, creating a longstanding and widespread body of law supporting its constitutionality. Therefore,

8

the court is satisfied that Wampler is "sufficiently excus[ed]" from having raised his Johnson claim before the district court at sentencing or on direct appeal. Reed, 468 U.S. at 17.

In addition, Wampler has established actual prejudice. Bousley, 523 U.S. at 622. His status as an armed career criminal not only subjected him to a statutory mandatory minimum sentence of 180 months, but it also established his guideline range for Counts One and Eight. Pursuant to U.S.S.G. § 4B1.4(b)(3), his status as an armed career criminal established a base offense level of 33, resulting in a guideline range of 188 to 235 months. PSR ¶¶ 39, 72. Had he not been classified as an armed career criminal, he would have had a base offense level of 26 and a guideline range of 78 to 97 months for those counts. Therefore, Wampler has demonstrated both cause and actual prejudice for his procedural default of a residual clause challenge on direct review; accordingly, the court concludes that his claims are not barred from review on the merits.

### C. Virginia Burglary following Johnson

Finally, Wampler is entitled to relief because his predicate conviction for Virginia burglary, one of three predicates necessary to support his armed career criminal designation, no longer qualifies as a violent felony, making him ineligible for the ACCA enhancement. Brown, 2017 WL 76932, *5-7 (concluding that a Virginia burglary conviction cannot support an ACCA enhancement because the Virginia statute establishes one crime that is broader than generic burglary). In 1992, Wampler pleaded guilty to a statutory burglary charge, a violation of Virginia Code § 18.2-91, which provides, "[i]f any person commits any of the acts mentioned in § 18.2-90 *with intent to commit larceny, or any felony other than murder, rape, robbery or arson* . . . he shall be guilty of statutory burglary." Virginia Code § 18.2-90, in turn, provides the elements of statutory burglary and read at the time of Wampler's conviction:

9

> If any person in the nighttime enters without breaking or in the daytime breaks and enters or enters and conceals himself in a dwelling house or an adjoining, occupied outhouse or in the nighttime enters without breaking or at any time breaks and enters or enters and conceals himself in any office, shop, manufactured home, storehouse, warehouse, banking house, or other house, or any ship, vessel or river craft or any railroad car, or any automobile, truck or trailer, if such automobile, truck or trailer is used as a dwelling or place of human habitation, with intent to commit murder, rape, or robbery, he shall be deemed guilty of statutory burglary . . . .

Va. Code Ann. § 18.2-90 (1992).

Although the ACCA lists burglary as one of the enumerated offenses, a defendant's prior conviction can qualify as a "burglary" under the ACCA only if it was a conviction for "generic burglary." In 1990, the Supreme Court concluded that "regardless of technical definitions and labels under state law," Congress "had in mind a modern 'generic' view of burglary" when it enacted the ACCA. Taylor, 495 U.S. at 589, 590. The Court went on to define generic burglary as: "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." Id. at 598.

There is no question that the Virginia burglary statute defines the crime of burglary more broadly than the generic definition, as the government concedes. This is because the Virginia burglary statute includes entry into locations other than a building or structure, including "any ship, vessel or river craft or any railroad car, or any automobile, truck or trailer, if such automobile, truck or trailer is used as a dwelling or place of human habitation." Va. Code Ann. § 18.2-90; see also Taylor, 495 U.S. at 599 (concluding that a Missouri burglary statute, which similarly criminalized the breaking into of places such as boats, vessels and railroad cars, was broader than generic burglary). In addition, the Virginia burglary statute is broader than generic burglary because it allows for a conviction without unlawful entry when a defendant enters "in

10

the nighttime." Va. Code Ann. § 18.2-90; see also Descamps v. United States, 133 S. Ct. 2276, 2282 (2013) (noting that a California burglary statute that does not require unlawful entry, "goes beyond the normal, 'generic' definition of burglary").

In addition, the Virginia burglary statute, § 18.2-90, is indivisible, that is, it "enumerates various factual means of committing a single element" or crime, and does not list multiple crimes. Mathis v. United States, 136 S. Ct. 2243, 2249 (2016); see also Brown, 2017 WL 76932, *5-7. In Graybeal v. Commonwealth, the Virginia Supreme Court made clear that the various locations listed in the Virginia burglary statute provide different means of committing one crime. 324 S.E.2d 698, 699 (Va. 1985). Graybeal was indicted for burglary of an "office or storehouse," but the evidence at trial showed that Graybeal had broken into unoccupied mobile homes and trailers on a mobile home sales lot. Id. The Virginia Supreme Court concluded that the evidence did not establish that Graybeal had burgled an "office or storehouse," as alleged in the indictment. It then went on to consider "whether the evidence provided a violation of any other provision of Code § 18.2-9[0]."[1] Id. The Court determined that the only possible location listed in the statute that Graybeal could have entered was a "trailer" because "[n]one of the other statutory categories plainly, obviously, or rationally applie[d] to the facts." Id. at 700. The Court also concluded that even though the evidence established that the mobile homes Graybeal had broken into qualified as "trailers," the government had not shown that they were currently

---

[1] The Graybeal opinion lists the code provision as § 18.2-91. However, this appears to be a typographical error as § 18.2-90 lists the various places in which statutory burglary may occur.

11

being used for habitation, an element that must be proved beyond a reasonable doubt to a jury.[2] Id. It seems clear that had the evidence established that the trailer was inhabited, the Supreme Court would have affirmed Graybeal's conviction even though he was not so charged. Because the Graybeal Court considered the locations within the statute to be interchangeable, this court concludes that § 18.2-90 provides only one indivisible crime.

Moreover, the Virginia appellate courts have not required that an indictment specify the location of the burglary. To the contrary, they have noted that the Commonwealth can charge a defendant "generally with statutory burglary" without listing specifics. Scott v. Commonwealth, 636 S.E.2d 893, 897 (Va. App. 2006); see also Descamps, 133 S. Ct. at 2290 (noting that "[a] prosecutor charging a violation of a divisible statute must generally select the relevant element from the list of alternatives"); Cf. United States v. Gundy, 842 F.3d 1156, 1167 (11th Cir. 2016) (noting that Georgia courts have consistently held that "the prosecutor must select and identify the relevant statutory locational element" in the indictment).

The statute, itself, reinforces the conclusion that the statute is indivisible. It provides for the same punishments for breaking and entering into all of the listed locations. Cf. Mathis, 135

---

[2] Although Virginia Code § 18.2-90 incorporates an additional proof element for automobiles, trucks or trailers—that they be "used as a dwelling or place of human habitation,"—the court does not conclude that breaking and entering these vehicles comprise a different crime within the statute. Each location will require proof of different facts, a ship will require proof that the premises was a water craft, a store will require proof that it is affixed to realty, etc. But based on Graybeal, it appears that Virginia statutory burglary, no matter where it takes place, comprises one crime. Even if the statute does set forth two locational elements, and therefore two crimes: (1) burglary of places on land, sea and rail, and (2) burglary of automobiles, trucks and trailers used for habitation, neither of those crimes conforms to generic burglary. See United States v. Cabrera-Umanzor, 728 F.3d 347, 352 (4th Cir. 2013) ("General divisibility, however, is not enough; a statute is divisible for purposes of applying the modified categorical approach only if at least one of the categories into which the statute may be divided constitutes, by its elements, a crime of violence."); Cf. United States v. Gundy, 842 F.3d 1156, 1168 (11th Cir. 2016) (concluding that the Georgia burglary statute, which includes a habitability requirement for vehicles, establishes a separate element of the offense resulting in divisibility). Generic burglary requires breaking into a building or premises permanently attached to real property, but the first grouping of locations in § 18.2-90 includes water and rail vehicles and the second grouping involves only mobile vehicles. As a result, "no conviction under the law could count as an ACCA predicate." Mathis, 136 S. Ct. at 2249.

S. Ct. at 2256 ("If statutory alternatives carry different punishments, then under Apprendi they must be elements"). Moreover, the Virginia statutory scheme codifies generic common law burglary in a separate statute, Virginia Code § 18.2-89, establishing distinct burglary crimes under different code sections.

Therefore, the court concludes that Virginia statutory burglary under § 18.2-90, is both broader than generic burglary and indivisible. Because Virginia statutory burglary cannot qualify as a predicate under the residual clause following Johnson, and because it cannot qualify as a predicate offense under the enumerated crimes clause in light of Mathis and Descamps, it cannot be used to support an armed career criminal designation under the ACCA.

**D. Resentencing is Appropriate**

Wampler received two concurrent 188-month sentences, one for Count One: the drug conspiracy charge, and one for Count Eight: the felon in possession charge. The fact that he received two concurrent sentences, one for a drug count that did not implicate the enhanced statutory maximum under the ACCA, does not preclude Wampler from obtaining relief. His designation as an armed career criminal established his guideline range of 188 to 235 months on both counts, as they were grouped together under the guidelines.

When a court finds that a defendant's criminal sentence is unlawful and vulnerable to collateral attack, it shall "vacate and set the judgment aside and shall discharge the prisoner or resentence him. . . ." 28 U.S.C. § 2255(b). Courts are granted "broad and flexible . . . power to fashion an appropriate remedy." United States v. Garcia, 956 F.2d 41, 45 (4th Cir. 1992). Because the sentences for the drug and felon in possession convictions were interdependent, the appropriate remedy is to resentence Wampler on both convictions. See, e.g., In re Davis, 829 F.3d 1297, 1300 (11th Cir. 2016) (concluding that where a court sentenced a defendant based on

a single sentencing guideline range for a felon in possession charge and a drug conspiracy charge, the defendant may obtain relief).

## III.

Wampler no longer has three qualifying offenses under the ACCA. Therefore, his enhanced sentence for being an armed career criminal is unlawful and he is entitled to resentencing. The court will grant Wampler's motion to vacate and deny the government's motion to dismiss.

**ENTER:** This 3rd day of March, 2017.

*[signature]*
Chief United States District Judge